The Honorable George Hopkins State Senator 78 Harver Hills Malvern, Arkansas 72104
Dear Senator Hopkins:
This is in response to your request for an opinion on several questions concerning the use of funds received under Act 122 of 1987, which governs the regulation of watercraft in Arkansas. You state that it is your understanding that Grant County has established a county emergency rescue fund, and that the Grant County Rescue Unit has been saving money to buy a particular item and allowing the moneys in the rescue fund to build to allow the purchase of this item. You also indicate, however, that it appears that some of the moneys (as is shown by attachments to your request) have been used to pay various expenses incurred by a Game and Fish Commission officer and other purposes. You have posed the following questions in this regard:
 The first question is whether moneys in the Grant County Rescue Unit Fund can be used for purposes other than expenditures for the rescue unit. The next question is specifically whether moneys in this fund may be used for game and fish protection or purposes that are not for a rescue unit. The third question is that if moneys have been spent from the rescue unit funds for other than for operating and maintaining emergency rescue service within the county, then what is the proper procedure for replacing the expended moneys?
You have also asked that I address two questions posed in a letter appended to your request. The first question asks for a definition of "emergency rescue service" as used in Act 122. The second question is whether the solicitation of competitive bidding will be necessary when the time comes to purchase a large piece of equipment (a rescue truck) from the county emergency rescue fund.
Your first two questions are controlled by A.C.A. § 27-101-111 (Repl. 1994), which governs the distribution of fees collected through the enforcement of the subchapters regulating watercraft. See A.C.A. §§27-101-101 — 111; 27-101-201 — 205; and 27-101-301 — 312. It provides in relevant part that:
 (a) The Treasurer of State, on or before the fifth of the month next following the month during which the funds shall have been received by him, shall distribute the funds in the manner provided this section:
 (1) Three percent (3%) of the amount to the Constitutional Officers Fund and the State Central Services Fund to be used for defraying the necessary expenses of the state government; and
(2) Ninety-seven percent (97%) of the amount thereof, as follows:
 (A) Ten percent (10%) to the Constitutional Officers Fund and the State Central Services Fund.
 (B) Forty-five percent (45%) to the Game Protection Fund for use by the Arkansas State Game and Fish Commission as provided by law.
 (C) Forty-five percent (45%) to the County Aid Fund which, on or before the tenth of the month following the end of each calendar quarter, shall be remitted by state warrants to the various county treasurers in the proportions thereof as between the respective counties that, as certified by the Director of the Department of Finance and Administration to the Treasurer of State, the total fees produced from each county bears to the total of the fees produced from all counties.
 (b) Upon receipt of any fees, each county treasurer shall deposit them into the county treasury to the credit of the boating safety and enforcement fund, if the county sheriff of that county has established a patrol on the waterways within the county.
 (c)(1) In the event the county sheriff has not established a patrol on the waterways within the county and if either the county or any city or town within a county, or both, has established an emergency rescue service, each county treasurer shall deposit his county's share of the total fees collected into the county emergency rescue funds for use exclusively by either the county or the cities within the county, or both, for operating and maintaining emergency rescue services within the county and cities within the county. After the treasurer receives the funds, he shall divide the funds in the county emergency rescue fund equally among the county and the cities within the county, if any, having emergency rescue services.
 (2) Otherwise, the fees shall be deposited into the Game Protection Fund for use by the Arkansas State Game and Fish Commission. [Emphasis added.]
As can be seen from the language above, funds distributed under Act 122 of 1987 to the county emergency rescue fund are to be used exclusively by either the county or the cities or both for operating and maintainingemergency rescue services within the county. This provision is applicable to those counties which have established an "emergency rescue service." I assume that the "Grant County Rescue Unit" is the "emergency rescue service" established in Grant County. It is therefore my opinion that the moneys in the emergency rescue fund should be used to support the Grant County Rescue Unit. Although an argument could be made that the term "emergency rescue services" as used above refers to a broad category of any such "services" the county provides, it is my opinion, when reading the statute as a whole, that the term "emergency rescue services" refers to the emergency rescue service created by a county or a city. In my opinion, therefore, the moneys in the rescue fund must be used exclusively to operate and maintain the Grant County Rescue Unit. I should note, however, that I cannot determine, from the information supplied, whether any of the expenditures in question were actually expended for purposes other than for operating and maintaining the Grant County Rescue Unit. This will be a question of fact with regard to each expenditure.
It is my opinion similarly, that the answer to your second question is "no." As can be seen from the relevant statute, some of the moneys arising from Act 122 of 1987 are allocated to the Game Protection Fund and are available for use for game and fish protection. Any moneys that are distributed to a county having an emergency rescue service and placed in the emergency rescue fund, however, are not available for these purposes.
Your third question is not so easily answered. If unauthorized payments have already been made by the county to vendors or others, the reimbursement of these amounts to the county emergency rescue fund may be problematic. Assuming the county does not have funds available from other sources to reimburse the emergency rescue fund, or is in any event unwilling to do so, it is possible that an action could be had on the bond of the disbursing officer. Whether any recovery is permissible under any such bond, however, would be a matter of contract between the parties entering into the bonding agreement. I should note again, however, that I cannot determine whether in fact any unauthorized payments have been made.
In response to the first question posed in the letter attached to your request, regarding a definition of "emergency rescue services" please note that I have enclosed a copy of Op. Att'y Gen. 93-267 which addresses this question.
In response to the second question posed in the correspondence attached to your request regarding the solicitation of competitive bids to purchase a rescue truck from the county emergency rescue fund, it is my opinion that the procedure outlined at A.C.A. § 14-22-101 to -115 (1987) and (Supp. 1995) will be applicable to such purchase. This subchapter requires the solicitation of bids for purchases exceeding ten thousand dollars, unless the purchase is one exempted from the solicitation of bids under § 14-22-106 (Supp. 1995). (Certain second-hand vehicles are exempted.)
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh